OPINION
{¶ 1} This case is before us on the appeal of Gerald Roberts from a trial court decision overruling Gerald's motion for relief from judgment. Gerald and his wife, Marilyn, were married for about 23 years, and were divorced in 1989. At the time of the divorce, Gerald was employed at Wright Patterson Air Force Base. The final decree, which was filed in July, 1989, ordered Gerald to convey and roll-over an amount equal to one-half of his contributions to his retirement plan that were earned during marriage. The decree did not specify the exact amount of these contributions; instead, it simply indicated that Gerald had $52,592 in his retirement account, not all of which was earned during marriage.
 {¶ 2} About one month after the decree, the parties filed a qualified domestic relations order (QDRO), which ordered that "one-half or 50% of the benefits of the Defendant's military pension that were accumulated during the course of the marriage, plus COLA shall be payable to the plaintiff (Marilyn) at such time as the Defendant (Gerald) retires from the military * * *." This QDRO was sent to the United States Air Force, but the Air Force returned it to the court in October, 1989, noting that Gerald was not an Air Force retiree. The Air Force provided an address for the Office of Personnel Management, which handled federal civil service employees.
 {¶ 3} No appeal was taken from either the final decree or the QDRO, and nothing further was done until September, 1996, when the parties filed another QDRO, this time with the Civil Service Retirement System (CSRS) correctly designated. Among other things, the 1996 QDRO stated that:
 {¶ 4} "Employee is, or will be eligible for retirement benefits under the CSRS based upon employment with the United States government. The Former Spouse is entitled to a pro-rata share of Employee's gross monthly annuity under the CSRS. The marriage began on the 25th day of June, 1966 and ended on the 28th day of July, 1989. The United States Office of Personnel Management is directed to pay Former Spouse's share directly to the Former Spouse."
 {¶ 5} The 1996 QDRO also provided in paragraph "f" that Marilyn would receive a "Former Spouse Survivor Annuity," which was to be funded by a reduction of her share of the retirement annuity, in the amount of the costs associated with providing the survivor's annuity. This QDRO was filed by agreement of the parties, and no appeal was taken.
 {¶ 6} However, about a year and a half later (in March, 1998), Gerald filed a motion to amend the original divorce decree. In the motion, Gerald claimed that he had received correspondence from the Office of Personnel Management indicating that his retirement had been reduced by about $400 per month, due to a former spouse's annuity. Gerald claimed this was not the intent of the court or the parties. As a result, Gerald asked that the decree be changed so that Marilyn would receive only a fraction of his retirement, without a survivorship annuity.
 {¶ 7} After the parties appeared at a hearing, the court filed an order granting Gerald leave to file an amended motion. The court indicated that it had originally believed the issue was the possible misinterpretation of paragraph "f" of the September, 1996 QDRO. However, based on the hearing, the court now believed that Gerald also wanted an altogether different issue considered, i.e., he wanted the court to consider the decree language specifying that Marilyn's benefits were to be based on contributions to Gerald's civil service pension during marriage.
 {¶ 8} Per the court's order, Gerald filed an amended motion for relief from judgment in July, 1998. In this motion, Gerald said he had been told by the civil service pension people in October or November, 1997, that the 1996 order did not give Marilyn one-half of the contributions made during marriage; instead the order allegedly gave her a much higher amount.
 {¶ 9} The trial court then held a hearing on January 6, 1999. Although the parties did not testify, their attorneys made statements. Gerald's attorney claimed that the 1989 divorce decree did not award Marilyn one-half Gerald's pension, but had simply ordered Gerald to roll-over or convey one-half of the contributions that he made to the retirement plan during marriage. In addition, Gerald's attorney argued that the 1996 QDRO was meant to implement the prior court order and did not adequately reflect the court's intent in the 1989 decree. Instead, the 1996 order changed the prior decree by awarding Marilyn one-half the continuing retirement benefits. Gerald also objected to the 1996 award to Marilyn of the former spouse annuity, which was not in the original divorce decree.
 {¶ 10} In contrast, Marilyn's attorney argued that the 1986 divorce decree stated that Marilyn was entitled to one-half the benefits accumulated during marriage and did not put a dollar figure on the amount of those benefits. Marilyn's attorney also noted that although the decree attempted to have the money conveyed or rolled-over, none of those options were available under the CSRS. Accordingly, the attorney prepared a QDRO giving Marilyn 50% of a pro-rata share of the pension benefits, i.e., those that accumulated during the 23 years of marriage. The QDRO had a beginning and ending point for the marriage, and allowed Gerald to have credit for benefits he earned before marriage, as well as any accumulation of benefits after the marriage ended.
 {¶ 11} On April 5, 1999, the trial court filed a decision and judgment denying the motion for relief from judgment. The court rejected the motion on all three grounds under Civ. R. 60(B): merit; entitlement to relief under a Civ. R. 60(B) ground; and timeliness. Specifically, the court found that the 1989 decree awarded Marilyn an amount equal to one-half of Gerald's contributions to his retirement plan during marriage, but did not assign a value to that amount. The 1989 QDRO, signed by both sides, ordered payment of one-half or 50% of the pension that was accumulated during marriage. Another QDRO was filed in 1996, awarding Marilyn a martial share of the CSRS benefits, using language similar to the terms in the 1989 QDRO. The court stressed that both parties and their attorneys signed the 1996 QDRO, and that no appeals were taken.
 {¶ 12} Based on the record and evidence before it, the court concluded that the 1996 order was not inconsistent with the divorce decree, which approximated the value of the pension as an indication of the nature of the property division, not as a property settlement figure. The court also found that the 1996 decree was not inconsistent with the 1989 QDRO, which distributed the pension as of the time of Gerald's future retirement. Furthermore, the court found Gerald's argument disingenuous, to the extent that it relied on a claim that the phrase "his contributions" during marriage meant only those amounts withheld from his paycheck during marriage. In this regard, the court stressed that "the rationale behind dividing the retirement pension of the parties' [sic] which was earned during marriage is the recognition that the pension represents compensation which the parties deferred in anticipation of benefitting from the employer's matching contributions and management of the funds."
 {¶ 13} The court further noted that survivorship benefits may be awarded where a decree is silent, so that a party may not be unfairly divested of his or her share if the participant former spouse dies before retirement. Because Marilyn was responsible for the cost of the annuity, and because Gerald failed to show that his annuity would be diminished by the survivor's annuity, the court held the 1996 QDRO properly ordered a survivor's annuity.
 {¶ 14} Based on the above facts, the trial court held that Gerald failed to allege sufficient facts to establish grounds for relief under Civ. R. 60(B). The court also found the motion untimely because motions based on mistake must be filed within one year of a judgment. In this regard, the court noted that the motion was filed more than one year after the 1996 QDRO, and that Gerald had offered no sufficient reason for the delay of ten years since the 1989 decree and accompanying QDRO were filed.
 {¶ 15} Gerald did not appeal from this decision. However, on October 3, 2003, Gerald filed a second motion for relief from judgment. This motion was directed to the September 26, 1996 QDRO that had been filed six years earlier. A very brief memorandum (with no supporting affidavits) was attached to the motion. In the memorandum, Gerald contended that his request was brought under Civ. R. 60(B)(5), and was based on the following facts:
 {¶ 16} "In the parties' divorce, the Defendant was to give the Plaintiff a portion of his retirement. However, in a judgment entered on September 26, 1996, the Plaintiff was granted a disproportionate share of the Defendant's retirement that was not granted in the parties' divorce."
 {¶ 17} After Marilyn filed a memorandum in opposition, the trial court denied the motion for relief from judgment on February 26, 2004. In its decision, the court stated that it had reviewed the record, which indicated that Gerald had previously filed a motion asking to set aside the division of his pension. Because the motion was previously rejected in 1999, and was not appealed, the trial court found that res judicata applied.
 {¶ 18} Gerald filed a timely notice of appeal from this decision, on March 25, 2004. In addition, Gerald filed a motion for reconsideration on March 17, 2004. In an affidavit attached to the motion for reconsideration, Gerald claimed that he had retired on January 3, 2003, and that his wife was receiving a disproportionate share of his retirement. Specifically, Gerald alleged that his wife was receiving benefits based on earnings throughout his service and not earnings based on the length of the marriage. The trial court denied the motion for reconsideration on March 26, 2004, and Gerald also appealed from that judgment. Both appeals are now before us.
 {¶ 19} As a single assignment of error, Gerald contends that "[t]he trial court committed an abuse of discretion when it overruled Gerald's motion for relief from judgment and motion to reconsider." After reviewing the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 20} Before discussing the assignment of error, we should note that we will not address issues pertaining to the March 17, 2004 motion for reconsideration, because motions for reconsideration following final orders are nullities. SeeCoutcher v. Coutcher, Lucas App. L-02-1054, 2003-Ohio-1-54, at ¶ 11 (finding motion for reconsideration of decision on QDRO is a nullity). See, also, Huffman v. Huffman, Adams App. Nos. 00CA704 and 01CA709, 2001-Ohio-2610, 2001 WL 1383020, *2, n. 1, and Pitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, paragraph one of the syllabus. Since a final judgment was filed in this case on February 26, 2004, the subsequent motion for reconsideration that was filed on March 17, 2004, was a nullity and had no effect.
 {¶ 21} Turning now to the merits, we note that the trial court rejected Gerald's first motion for relief from judgment in April, 1999, and Gerald failed to appeal. Gerald's second motion for relief from judgment was filed in October, 2003, and was overruled in February, 2004. Concerning motions for relief from judgment, Civ. R. 60(B) provides that:
 {¶ 22} "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation."
 {¶ 23} To prevail on a Civ. R. 60(B) motion,
 {¶ 24} "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTEAutomatic Elec., Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, paragraph two of the syllabus.
 {¶ 25} If any of these three requirements is not satisfied, the motion should be overruled. Rose Chevrolet, Inc. v. Adams
(1988), 36 Ohio St.3d 17, 20. Furthermore, "when a motion for relief from judgment has been denied, principles of resjudicata prevent relief on successive, similar motions raising issues which were or could have been raised originally." In reBuechter, Miami App. No. 2002-CA-22, 2002-Ohio-5598, at ¶ 9, citing Brick Processors, Inc. v. Culbertson (1981),2 Ohio App.3d 478, 442.
 {¶ 26} We review decisions on motion for relief from judgment for abuse of discretion, which means that the trial court acted unreasonably, arbitrarily, or unconscionably. State ex rel.Richard v. Seidner, 76 Ohio St.3d 149, 151, 1996-Ohio-54. After reviewing the record, we find no abuse of discretion.
 {¶ 27} Gerald's first motion for relief from judgment was brought under Civ. R. 60(B)(1), on the grounds of mistake. His second motion for relief from judgment was brought under Civ. R. 60(B)(5). However, other than saying that the second motion was brought under subsection (B)(5), Gerald did not tell the court the basis for his motion. Specifically, instead of providing a reason like mistake or fraud, Gerald simply said that his ex-wife had been granted a disproportionate share of his retirement in the 1996 decree that was not granted in the divorce. However, the disproportionate nature of the pension order was previously raised in 1999. Any issues pertaining to the amount or method of calculating the pension could have been raised at that time.
 {¶ 28} Furthermore, the second motion for relief from judgment did not comply with the requirements of Civ. R. 60(B), because "the movant must do more than make bare allegations that he or she is entitled to relief." Kay v. Marc Glassman, Inc.76 Ohio St.3d 18, 20, 1996-Ohio-430. This does not mean that evidentiary materials were required, but something more was needed other than the brief statement that Gerald made in the memorandum. Id.
 {¶ 29} As an additional matter, the "catch-all" provision in Civ. R. 60(B)(5) is "not to be used as a substitute for Civil Rule 60(B)(1), (2) or (3), when it is too late to seek relief under these provisions. Civil Rule 60(B)(5) is only to be used in an extraordinary and unusual case when the interests of justice warrants it." Adomeit v. Baltimore (1974), 39 Ohio App.2d 97,105. The motion and memorandum in the present case fail to mention any circumstances or facts that would warrant the use of extraordinary relief. The memorandum also fails to provide any reason for the delay in seeking relief. Notably, the motion was filed fifteen years after filing of the original divorce decree and QDRO, and more than six years after the 1996 decree was filed. And again, issues pertaining to the 1996 QDRO were previously considered when the trial court overruled the first motion for relief from judgment. Accordingly, the trial court did not abuse its discretion in overruling the motion for relief from judgment and the motion for reconsideration.
 {¶ 30} Based on the preceding discussion, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Fain, P.J., and Young, J., concur.